UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KELVIN SIMMONS, | CIV. NO. 25-00341 LEK-KJM |
| Plaintiff, | |
| vs. | |
| JASON WOO, ESQ., ATTORNEY FOR PLAINTIFF;  STOTT PROPERTY MANAGEMENT LLC, PROPERTY MANAGER; REGISTERED AGENT: TIM KELLEY; TIMOTHY J. KELLEY, PRINCIPAL BROKER; TIA KAIPUALA MURRAY, FORMER LEASING AGENT; NOW WITH CARVILL SOTHEBY'S INT'L REALTY; RUSSELL G. L. CHUN, LANDLORD/PROPERTY OWNER; LEI N. CHUN, LANDLORD/PROPERTY OWNER; RENEE CABUGUA LYMAN, MANAGER/OWNER, LYMAN SERVICES LLC; AND  LYMAN SERVICES LLC, BUSINESS ENTITY OWNED/MANAGED BY RENEE LYMAN; | |
| Defendants. | |

**ORDER STAYING THE CASE AND DENYING PLAINTIFF'S
APPLICATION TO PROCEED IN DISTRICT COURT
WITHOUT PREPAYING FEES OR COSTS, [FILED 8/12/25 (DKT. NO. 3)]**

On August 12, 2025, pro se Plaintiff Kelvin Simmons

("Plaintiff" or "Simmons") filed a Complaint for Violation of

Civil Rights ("8/12 Complaint") against Defendants Jason Woo,

Stott Property Management LLC ("Stott"), Timothy J. Kelley, Tia

Kaipuala Murray, Russell G.L. Chun, Lei N. Chun, Renée Cabugua

Lyman, and Lyman Services LLC (collectively, "Defendants").

[Dkt. no. 1 at PageID.1-2.] The same day, Simmons filed an

Application to Proceed in District Court Without Prepaying Fees or Costs ("Application") and a "Notice of Intent to Delay Service" ("First Notice"). [Dkt. nos. 3, 5.] On August 29, 2025, Simmons filed an "Expanded Notice of Preservation Regarding ICA Void Entry and Anticipated Piggyback Filings by Woo" ("Second Notice"). [Dkt. no. 8.] The Court liberally construes the 8/12 Complaint, the First Notice, and the Second Notice collectively as Simmons's Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). For the reasons set forth below, the case is stayed pending the resolution of Simmons's state court proceedings, and the Application is denied as moot.

<u>**BACKGROUND**</u>

Simmons brings this action alleging, among other things, that Defendants, "a group of private and quasi-public actors," engaged in "a prolonged and coordinated campaign of disability discrimination, retaliation, fraud, and procedural abuse" against him. [8/12 Complaint at PageID.4.]

According to Simmons, this alleged campaign began in 2023, when Simmons, "a legally blind individual," "disclosed his disability" and "requested reasonable accommodations from his housing provider." See id. at PageID.12. Simmons alleges that some of the reasonable accommodations he requested were accessible communications, maintenance coordination, and alternative dispute resolution. See id. In response to Simmons's

2

"invocation of [the Americans with Disabilities Act ('ADA')] protections and filing of internal and administrative complaints," Defendant Tia Murray allegedly retaliated by sending Simmons "threatening and hostile correspondence." <u>See id.</u> Defendants Stott Property Management LLC ("Stott") and Timothy J. Kelley ("Kelley") also allegedly retaliated by engaging in efforts "to terminate Plaintiff's tenancy," which resulted in Defendant Jason Woo, Esq. ("Woo") filing an action to evict Simmons. <u>See id.</u> at PageID.12-13. These efforts, according to Simmons, resulted in Simmons's eviction. <u>See id.</u> at PageID.13-14.

Simmons alleges that Woo, on behalf of Stott and Kelley, improperly filed an eviction action in the District Court of the First Circuit of the State of Hawai`i, Honolulu Division ("state district court") on October 2, 2023 ("Eviction Action" or "1DRC-23-0006533"). <u>See id.</u> at PageID.13; <u>see also</u> <u>Stott Prop. Mgmt. LLC v. Simmons</u>, Case No. 1DRC-23-0006533 (Hawai`i 1st Cir., Dist. Ct., Honolulu Div.). The state district court ruled against Simmons,[1] and, on January 23, 2024, a Judgment for Possession ("Judgment") and a Writ of Possession ("Writ") were filed. <u>See</u> 1DRC-23-0006533, dkt. nos. 143, 145.

---

[1] The Court notes that Leonida Simmons was also named as a defendant in the Eviction Action. <u>See</u> 1DRC-23-0006533, Complaint, filed 10/2/23 (dkt. no. 1), at pg. 1. Leonida Simmons is not a party in the current action.

The Writ was executed on January 31, 2024. <u>See</u> 1DRC-23-0006533,
dkt. no. 155; <u>see also</u> 8/12 Complaint at PageID.13.

Several months later, on April 1, 2024, Simmons filed
a notice of removal. <u>See</u> 1DRC-23-0006533, dkt. no. 160. Simmons
sought to remove the Eviction Action ("Removal Proceeding") to
the First Circuit Court ("state circuit court"). <u>See</u> <u>Stott Prop.
Mgmt. LLC v. Simmons</u>, Case No. 1CCV-24-0000518 (Hawai`i 1st Cir.
Ct.) ("1CCV-24-0000518"), Commitment to Circuit Court, filed
4/23/24 (dkt. no. 1). Simmons, however, failed to pay a court-
mandated fee. <u>See</u> 1CCV-24-0000518, Order Striking Document
Because Court Fees Were Not Paid, filed 5/11/24 (dkt. no. 11).
As a result, on May 31, 2024, the state circuit court issued a
minute order stating that "there is no matter pending in the
Circuit Court." <u>See</u> 1CCV-24-0000518, dkt. no. 13. In a June 6,
2025 order addressing various motions ("Order Denying
Reinstatement"), the state circuit court further clarified that
"[a]ny request for relief related to the judgment obtained by
the plaintiff in the [Eviction Action] must be directed to the
District Court, or to the appellate court pursuant to a timely
filed appeal." <u>See</u> <u>id.</u>, dkt. no. 43 at 4.

Simmons subsequently sought to appeal the Order
Denying Reinstatement, and effectively sought to appeal the
Judgment and Writ, to the Intermediate Court of Appeals of the
State of Hawai`i ("ICA"). <u>See</u> 1CCV-24-0000518, Notice of Appeal

4

to the Intermediate Court of Appeals of the State of Hawai`i, filed 7/7/25 (dkt. no. 78).  The appeal is ongoing. See Stott Prop. Mgmt. LLC v. Simmons, No. CAAP-25-0000493 (Hawai`i Ct. App.) ("CAAP-25-0000493").

Simmons also filed a counterclaim related to the Eviction Action. See 8/12 Complaint at PageID.14. On October 16, 2023, Simmons filed a Counterclaim against Stott. [1DRC-23-0006533, dkt. no. 17.] Several weeks later, on November 21, 2023, Simmons's Counterclaim was committed to the state circuit court ("Counterclaim Proceeding"). See Stott Prop. Mgmt. LLC v. Simmons, Case No. 1CCV-23-0001508 (Hawai`i 1st Cir. Ct.) ("1CCV-23-0001508"), Commitment to Circuit Court, filed 11/21/23 (dkt. no. 1). In the Counterclaim Proceeding, Simmons brings counterclaims against Stott and others,[2] including some of the Defendants in the instant case. See id., Amendment of Relief Sought (Following Amended Counterclaim/Prior to Service of Summons) Seeking Separate Relief from Multiple Co-Defendants, filed 4/10/25 (dkt. no. 230), at 1. Simmons alleges, in part, that:

> . . . Counter-Defendants [Stott] and their
> agents and sub-contractor engaged in
> discriminatory practices, retaliation, and

---

[2] The Court notes that although Leonida Simmons was originally named as a party in the Counterclaim Proceeding, she is no longer a party in the Counterclaim Proceeding. See 1CCV-23-0001508, Notice Regarding Status of Prior Defendant Leonida Simmons, filed 4/21/25 (dkt. no. 267), at 1.

fraudulent activities in violation of
multiple Hawaii Revised Statutes, including:

• HRS §515-3 & HRS §515-16 (Discriminatory
        Housing Practices)
• HRS §521-71(f) & HRS §521-71(c) (Tenant
        Rights and Protections)
• HRS §708-835.65 (Fraud & False Statements)
• HRS §661-22 (False Claims)
• HRS §431:14A-116 (Fraudulent Invoicing)
• HRS §710-1060 (Perjury)
• HRS Chapter §657 (Conspiracy to Commit
        Fraud)

Counter-Claimants seek legal redress for these
violations and hold Counter-Defendants
accountable for their discriminatory,
retaliatory, and fraudulent actions.

[Id., Amended Counterclaim Complaint, filed 3/29/25 (dkt.

no. 66), at ¶ 27.]

       Simmons also alleges that the counter-defendants

violated several federal laws including: Title 42 United States

Code Section 3601 ("Fair Housing Act" or "FHA"); Title 42 United

States Code Section 12101 ("Americans with Disabilities Act" or

"ADA"); and Title 42 United States Code Section 1983. See 1CCV-

23-0001508, Supplemental Filing to Amended Counterclaim

Complaint (Preservation of Record – Pre-Service) for Entry into

May 28, 2025 Hearing Docket, filed 5/18/25 (dkt. no. 285), at

§ III. Simmons's Counterclaim Proceeding is ongoing. See 1CCV-

23-0001508 docket.

       In the instant case, the core of the Complaint is

Simmons's request for declaratory relief "that the judgment and

writ of possession issued in Case No. 1DRC-23-0006533 are void
ab initio due to lack of subject matter jurisdiction, lack of
service, denial of ADA accommodations, and deprivation of due
process." [8/12 Complaint at PageID.19.] In other words, Simmons
requests that the Court vacate the Judgment and Writ. See id. at
PageID.19, PageID.23. Further, Simmons seeks related relief,
such as: declaratory relief, compensatory damages, and any other
appropriate relief. See id. at PageID.19-24.

### STANDARD

"Federal courts can authorize the commencement of any
suit without prepayment of fees or security by a person who
submits an affidavit that demonstrates he is unable to pay."
Smallwood v. Fed. Bureau of Investigation, CV. NO. 16-00505 DKW-
KJM, 2016 WL 4974948, at *1 (D. Hawai`i Sept. 16, 2016) (citing
28 U.S.C. § 1915(a)(1)).

> The Court subjects each civil action
> commenced pursuant to Section 1915(a) to
> mandatory screening and can order the dismissal
> of any claims it finds "frivolous, malicious,
> failing to state a claim upon which relief may be
> granted, or seeking monetary relief from a
> defendant immune from such relief." 28 U.S.C.
> § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122,
> 1126-27 (9th Cir. 2000) (en banc) (stating that
> 28 U.S.C. § 1915(e) "not only permits but
> requires" the court to *sua sponte* dismiss an *in
> forma pauperis* complaint that fails to state a
> claim);[3] Calhoun v. Stahl, 254 F.3d 845, 845
> (9th Cir. 2001) (per curiam) (holding that "the

---

[3] Lopez has been overruled, in part, on other grounds by
Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc).

provisions of 28 U.S.C. § 1915(e)(2)(B) are not
limited to prisoners").

<u>Id.</u> at *3.

In addition, the following standards apply in the

screening analysis:

Plaintiff is appearing pro se; consequently,
the court liberally construes her pleadings.
<u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir.
1987) ("The Supreme Court has instructed the
federal courts to liberally construe the
'inartful pleading' of pro se litigants." (citing
<u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (per
curiam))). The court also recognizes that
"[u]nless it is absolutely clear that no
amendment can cure the defect . . . a pro se
litigant is entitled to notice of the complaint's
deficiencies and an opportunity to amend prior to
dismissal of the action." <u>Lucas v. Dep't of
Corr.</u>, 66 F.3d 245, 248 (9th Cir. 1995); <u>see also
Lopez v. Smith</u>, 203 F.3d 1122, 1126 (9th. [sic]
Cir. 2000).

Despite the liberal pro se pleading
standard, the court may dismiss a complaint
pursuant to Federal Rule of Civil
Procedure 12(b)(6) on its own motion. <u>See Omar v.
Sea-Land Serv., Inc.</u>, 813 F.2d 986, 991 (9th Cir.
1987) ("A trial court may dismiss a claim *sua
sponte* under [Rule] 12(b)(6). Such a dismissal
may be made without notice where the claimant
cannot possibly win relief."); <u>see also Baker v.
Dir., U.S. Parole Comm'n</u>, 916 F.2d 725, 727 (D.C.
Cir. 1990) (holding that district court may
dismiss cases *sua sponte* pursuant to
Rule 12(b)(6) without notice where plaintiff
could not prevail on complaint as alleged). . . .
"Federal courts are courts of limited
jurisdiction," possessing "only that power
authorized by Constitution and statute." <u>United
States v. Marks</u>, 530 F.3d 799, 810 (9th Cir.
2008) (quoting <u>Kokkonen v. Guardian Life Ins.
Co.</u>, 511 U.S. 375, 377 (1994)). The assumption is
that the district court lacks jurisdiction. <u>See</u>

> Kokkonen, 511 U.S. at 377. Accordingly, a "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

Flores v. Trump, CIVIL 16-00652 LEK-RLP, 2017 WL 125698, at *1 (D. Hawai`i Jan. 12, 2017) (some alterations in Flores) (some citations omitted).

## DISCUSSION

### I.   Screening of the Complaint

Because Simmons filed an application to proceed in forma pauperis, the Court must screen his Complaint and determine whether the action can proceed. See 28 U.S.C. § 1915(a). Further, because state court proceedings and this federal action involve largely the same parties and issues are proceeding simultaneously, the Court must apply the Colorado River doctrine to the instant case. See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

####    A.   *Colorado River* Doctrine

Simmons alleges that Defendants, *inter alia*, "[e]ngaged in unlawful eviction proceedings." [8/12 Complaint at PageID.5.] Simmons, therefore, requests that the Court "[v]acate a void judgment entered without jurisdiction or due process in Hawai`i District Court (Case No. 1DRC-23-0006533)," [id. at PageID.6,] "expunge any record of the eviction," [id. at PageID.22,] and "declare[] [the Judgment and Writ] void ab

initio and all downstream actions vacated," [id. at PageID.27].
Simmons also alleges that Defendants violated federal laws
including the FHA, the ADA, and Title 42 United States Code
Section 1983, as well as "related state law provisions,
including fraud, civil conspiracy, and intentional infliction of
emotional distress." [Id. at PageID.5.] Simmons's state court
proceedings remain pending. See supra Background Section.

The Colorado River doctrine allows a federal district
court to stay a case when a concurrent action is pending in
another court system in order to conserve judicial resources.
See Colorado River, 424 U.S. at 817. This doctrine furthers the
purpose of "wise judicial administration, giving regard to
conservation of judicial resources and comprehensive disposition
of litigation." Id. at 817-18 (brackets and citations omitted).

The Ninth Circuit has stated:

"Generally, as between state and federal
courts, the rule is that 'the pendency of an
action in the state court is no bar to
proceedings concerning the same matter in the
Federal court having jurisdiction.'" Colorado
River, 424 U.S. at 817, 96 S. Ct. 1236 (quoting
McLellan [v. Carland], 217 U.S. [268,] 282, 30 S.
Ct. 501 [(1910)]). However, the Supreme Court has
identified several instances in which it is
appropriate for a federal court to abstain from
exercising its jurisdiction. See, e.g., id. at
813-17, 96 S. Ct. 1236 (discussing traditional
abstention doctrines). As relevant here, in
Colorado River, the Supreme Court recognized that
in "exceptional circumstances," id. at 813, 96 S.
Ct. 1236, "considerations of '[w]ise judicial
administration, giving regard to conservation of

10

> judicial resources and comprehensive disposition
> of litigation'" can support a stay of federal
> litigation in favor of parallel state
> proceedings, id. at 817, 96 S. Ct. 1236
> (alteration in original) (quoting Kerotest Mfg.
> Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180,
> 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)).

Ernest Bock, LLC v. Steelman, 76 F.4th 827, 835–36 (9th Cir.

2023) (some alterations in Ernest Bock), *cert. denied*, 144 S.

Ct. 554 (2024). Although it has similarities with abstention

doctrines, the Colorado River doctrine is not an abstention

doctrine. Id. at 836.

> [A] stay of federal litigation in favor of state
> court proceedings "is the exception, not the
> rule." Colorado River, 424 U.S. at 813, 96 S. Ct.
> 1236. "Only the clearest of justifications will
> warrant" a stay, id. at 819, 96 S. Ct. 1236, and
> the circumstances justifying a stay are
> "exceedingly rare," Smith [v. Cent. Ariz. Water
> Conservation Dist.], 418 F.3d [1028,] 1033 [(9th
> Cir. 2005)].
>
> This court weighs eight factors to determine
> whether a Colorado River stay is justified:
>
> > (1) which court first assumed jurisdiction
> > over any property at stake; (2) the
> > inconvenience of the federal forum; (3) the
> > desire to avoid piecemeal litigation;
> > (4) the order in which the forums obtained
> > jurisdiction; (5) whether federal law or
> > state law provides the rule of decision on
> > the merits; (6) whether the state court
> > proceedings can adequately protect the
> > rights of the federal litigants; (7) the
> > desire to avoid forum shopping; and
> > (8) whether the state court proceedings will
> > resolve all issues before the federal court.
>
> R.R. Street [& Co. v. Trans. Ins. Co.], 656 F.3d
> [966,] 978–79 [(9th Cir. 2011)] (citing Holder

11

> [v. Holder], 305 F.3d [854,] 870 [(9th Cir.
> 2002)]). "The factors are not a 'mechanical
> checklist.' We apply the factors 'in a pragmatic,
> flexible manner with a view to the realities of
> the case at hand. The weight to be given to any
> one factor may vary greatly from case to case.'"
> [United States v.] State Water Res. Control Bd.,
> 988 F.3d [1194,] 1203 [(9th Cir. 2021)]
> (citations omitted) (quoting Moses Cone [Mem.'l
> Hosp. v. Mercury Constr. Corp.], 460 U.S. [1,]
> 16, 21, 103 S. Ct. 927 [(1983)]). "Some factors
> may not apply in some cases," but in other cases,
> "a single factor may decide whether a stay is
> permissible." Id. (cleaned up). "The underlying
> principle guiding this review is a strong
> presumption **against** federal abstention." Seneca
> [Ins. Co. v. Strange Land, Inc.], 862 F.3d [835,]
> 842 [(9th Cir. 2017)] (emphasis added). "Any
> doubt as to whether a factor exists should be
> resolved against a stay, not in favor of one."
> Travelers Indem. Co. v. Madonna, 914 F.2d 1364,
> 1369 (9th Cir. 1990).

Id. at 836–37.

B.    **Eighth Factor (Parallelism)**

Parallelism is a threshold requirement for a
Colorado River stay:

> When a district court decides to dismiss or
> stay under Colorado River, it presumably
> concludes that the parallel state-court
> litigation will be an adequate vehicle for
> the complete and prompt resolution of the
> issues between the parties. If there is any
> substantial doubt as to this, it would be a
> serious abuse of discretion to grant the
> stay or dismissal at all. Thus, the decision
> to invoke Colorado River necessarily
> contemplates that the federal court will
> have nothing further to do in resolving any
> substantive part of the case, whether it
> stays or dismisses.

Moses Cone, 460 U.S. at 28, 103 S. Ct. 927
(citations omitted). The Court reiterated that "a

district court normally would expect the order
granting the [Colorado River] stay to settle the
matter for all time." Gulfstream Aerospace Corp.
v. Mayacamas Corp., 485 U.S. 271, 277, 108 S. Ct.
1133, 99 L. Ed. 2d 296 (1988).[4] "[T]he granting
of a Colorado River [stay] necessarily implies an
expectation that the state court will resolve the
dispute." Id. at 278, 108 S. Ct. 1133. Applying
these principles, we have recognized that
"[p]arallelism is necessary but not sufficient to
counsel in favor of abstention." Seneca, 862 F.3d
at 845. But "exact parallelism . . . is not
required. It is enough if the two proceedings are
'substantially similar.'" Nakash [v. Marciano],
882 F.2d [1411,] 1416 [(9th Cir. 1989)]
(citations omitted).

Id. at 838 (some alterations in Ernest Bock).

The Ninth Circuit previously held that "suits were

sufficiently parallel because they concerned the same relevant

conduct and named the same pertinent parties. The parallelism

requirement was met even though additional parties were named in

the state suit, the federal suit included additional claims, and

the suits arguably focused on different aspects of the dispute."

Montanore Mins. Corp. v. Bakie, 867 F.3d 1160, 1170 (9th Cir.

2017) (citing Nakash, 882 F.2d at 1416-17). In Ernest Bock, the

Ninth Circuit recognized that Nakash and Bakie could be

interpreted as permitting a Colorado River stay even where the

state court proceeding does not fully resolve the federal court

case. Ernest Bock, 76 F.4th at 839. However, in other cases, the

_____

    [4] Gulfstream was superseded on other grounds by the Federal
Arbitration Act. See, e.g., Jackson v. Amazon.com, Inc., 65
F.4th 1093, 1098 (9th Cir. 2023).

Ninth Circuit "expressly held that a 'substantial doubt' about whether continued federal litigation would be necessary after resolution of state proceedings **precludes** a stay." Id. (emphasis in Ernest Bock) (citing Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912-13 (9th Cir. 1993)).

The Ninth Circuit considered the cases that affirmed the Intel analysis, as well as case law from other circuits. Id. at 840-41. The Ninth Circuit ultimately concluded that Intel was more consistent with Moses Cone and held that: "When one possible outcome of parallel state court proceedings is continued federal litigation, we find a 'substantial doubt' that the state court action will provide a 'complete and prompt resolution of the issues,' because the federal court may well have something 'further to do.'" Id. at 841 (quoting Moses Cone, 460 U.S. at 28, 103 S. Ct. 927). Nevertheless, "Ernest Bock did not abrogate [Ninth Circuit] prior precedent." Mendocino Railway v. Ainsworth, 113 F.4th 1181, 1192 (9th Cir. 2024) (citation omitted);[5] see also id. ("the [Ernest Bock] outcome was reconcilable with Nakash, where it was unclear the state court proceedings would result in an outcome that would require federal litigation" (citing Ernest Bock, 76 F.4th at 840 n.17)).

---

[5] Mendocino Railway's petition for certiorari before the United States Supreme Court was docketed on March 14, 2025. See Mendocino Railway v. Ainsworth, No. 24-986.

The Court finds that the parallelism factor weighs heavily in favor of a stay. As Simmons describes it, "[t]hese proceedings involve the same parties, overlapping facts, and legal issues, including judicial misconduct, procedural sabotage, ADA violations, and retaliation." [First Notice at PageID.49.] The Court agrees.

Simmons requests that the Court declare the Judgment and Writ void on four procedural and substantive grounds. See 8/12 Complaint at PageID.19. Simmons also seeks declaratory and injunctive relief, as well as damages, stemming from Defendants' alleged violations of federal laws such as the FHA, the ADA, and Section 1983 and "related state law provisions . . . ." See id. at PageID.5.

The resolution of the ICA appeal will address the Judgment, the Writ, and the Order Denying Reinstatement. The resolution of the Counterclaim Proceeding will address the remaining substantive issues in this case. If Defendants prevail in the state court proceedings, they will prevail on all of Simmons's claims in this case. If Simmons prevails in the state court proceedings, he will prevail on the merits of his claims in this case, and the only issue remaining would be the determination of the appropriate remedies. Therefore, the parallelism factor is met.

C.    **Other Factors**

The first factor – which court first assumed jurisdiction over the property at issue - is neutral. Although the issues in this case and the state court proceedings relate to Simmons's eviction, neither court has been asked to assume jurisdiction over any property. Cf. Horowitz v. Sulla, CIVIL NO. 15-00186 JMS-BMK, 2015 WL 5439227, at *6 (D. Hawai`i Sept. 11, 2015) (holding that ejectment actions are in personam actions under Hawai`i law and not in rem actions (citing Knaefler v. Mack, 680 F.2d 671, 676 (9th Cir. 1982)). The second factor – the inconvenience of the federal forum – is either neutral or inconsequential because both the federal and state forums are located in Honolulu and therefore present no inconvenience to the parties. See Ernest Bock, 76 F.4th at 838 n.12 ("We also agree that factors one [and] two . . . are neutral or inconsequential. Neither the federal nor the state court has exercised jurisdiction over property, and . . . . [t]here is also no indication that the federal forum is inconvenient.").

The third factor also weighs in favor of a stay. When this Court considers the third factor, avoiding duplicative litigation, relevant factors include duplicating judicial efforts, wasting judicial resources, and the possibility of inconsistent results, which would cause confusion between the

parties. See id. at 837. "The mere possibility of piecemeal

litigation does not constitute an exceptional circumstance.

Instead, the case must raise a special concern about piecemeal

litigation, which can be remedied by staying or dismissing the

federal proceeding." R.R. St., 656 F.3d at 979 (some citations

and internal quotation marks omitted) (citing Moses H. Cone, 460

U.S. at 20–21, 103 S. Ct. 927 (noting that a stay of the federal

suit would not alleviate the possibility that some claims would

be subject to arbitration while others were decided in court)).

          This factor weighs in favor of a stay in this case

because, as explained above, Simmons seeks to litigate the same

issues as those in the state court proceedings. Further, Simmons

brings largely the same state and federal claims against largely

the same Defendants[6] in the instant action as in the state

proceedings. If the instant case and the state court actions

proceed simultaneously, there would not only be piecemeal

litigation, but there would also be a duplication of efforts and

a significant risk of inconsistent results: deciding the merits

---

          [6] Simmons named the following as counter-defendants in the
Counterclaim Proceeding: Stott; Tim Kelley; Tia Murray; Lei
Nayoi Chun; Russell Goon Lai Chun; and Lyman Services, LLC.
[1CCV-23-0001508, Amendment of Relief Sought (Following Amended
Counterclaim/Prior to Service of Summons) Seeking Separate
Relief from Multiple Co-Defendants, filed 4/10/25 (dkt.
no. 230), at 1.] Simmons names all of those Defendants in his
Complaint, as well as Woo and Renée Cabugua Lyman. See 8/12
Complaint at PageID.1-2.

of the claims in the instant case would require this Court to rule upon the same issues that are before the ICA and the state circuit court.

The fourth factor – the order in which jurisdiction was obtained – also weighs in favor of a stay, given that the instant action is at the screening stage, and Defendants have not yet been served. As noted in the Background section above, the Judgment and Writ are on appeal before the ICA; the Counterclaim Proceeding has been ongoing since November 2023. Thus, the state courts have made significantly more progress on the action than the Court. See Ernest Bock, 76 F.4th at 837-38. Thus, based both on the filing dates and the progress of the litigation, this factor weighs in favor of dismissal or stay.

When analyzing the fifth factor, which addresses the source of the rule of decision, "the presence of federal-law issues must always be a major consideration weighing against" a stay. See Moses Cone, 460 U.S. at 26. The Supreme Court, however, has also stated that this factor is less significant where the federal law at issue is one that federal and state courts have concurrent jurisdiction over. See id. at 25.

"[F]ederal and state courts enjoy concurrent jurisdiction over . . . 42 U.S.C. § 1983." Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co., 39 F.3d 951, 956 (9th Cir. 1994). Federal and state courts also enjoy concurrent

18

jurisdiction over ADA claims, see In re Doe, 100 Hawai`i 335, 341 n.9, 60 P.3d 285, 291 n.9 (2002) ("We note that state courts have concurrent jurisdiction over ADA claims." (citation omitted)), and over FHA claims brought by private persons, see Title 42 United States Code Section 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."). Thus, although Simmons's claims sound predominantly in state law, to the extent that Simmons seeks relief under federal law, state courts have concurrent jurisdiction, making this factor weigh in favor of a stay.

In his Second Notice, Simmons argues that "[o]n July 23, 2025, Plaintiff invoked the Supremacy Clause of the U.S. Constitution (Art. VI, cl. 2), freezing all state proceedings." [Second Notice at PageID.55.] Simmons provides no legal authority to support his claim that the invocation of the Constitution's Supremacy Clause can unilaterally freeze state proceedings concerning factual and legal issues identical to those in the later-filed federal proceedings. The Court is unaware of any such authority. To the extent Simmons seeks an injunction "freezing all state proceedings," see id., or to "[p]revent further misuse of judicial process," see 8/12

19

Complaint at PageID.23, such an injunction, without more, would contradict Title 28 United States Code Section 2283 ("Anti-Injunction Act")[7] and established Supreme Court precedent. See, e.g., Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 294 (1970) ("[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear.").

The sixth factor "is of little or no weight" when the state forum is adequate to protect federal rights. See Travelers Indem., 914 F.2d at 1370 (stating the sixth factor is concerned with the state court's adequacy to protect federal rights). Here, there are no obstacles to the state courts protecting federal rights. Simmons can and has appealed the Judgment, the Writ, and the Order Denying Reinstatement to the ICA. He can also appeal any final judgment from the Counterclaim Proceeding to the ICA. In short, the same issues are actively at issue in

_____

[7] The Anti-Injunction Act expressly provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Simmons does not invoke any of these statutory exceptions.

the state court proceeding, and state courts can resolve these issues just as effectively as federal courts.

> [T]he seventh factor in our Colorado River test is "the desire to avoid forum shopping." R.R. St., 656 F.3d at 979. "In the Colorado River context, [we have] held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir. 1990). "If [the party] pursued suit in a new forum after facing setbacks in the original proceeding, this factor may weigh in favor of a stay." Montanore Minerals, 867 F.3d at 1169 (citation and internal quotation marks omitted). However, "[i]t typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice." Seneca Ins., 862 F.3d at 846 (internal quotation marks and citation omitted); see also Holder, 305 F.3d at 869 (deeming it important that granting a stay "would deprive [the husband] of his choice of forum" because the husband chose to file his Hague Convention claim in federal court).

> The court also considers a lapse in time in determining whether a party has engaged in forum shopping. For example, when a party waits three-and-a-half years, see Nakash, 882 F.2d at 1417, or two-and-a-half years, see Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1259 (9th Cir. 1988), after initially filing in state court, that can weigh in favor of a stay.

> There is a strong presumption that the presence of an additional claim in the federal suit means that Colorado River is inapplicable. However, because of the concern over forum shopping, there might be rare circumstances in which a district court could properly issue a partial Colorado River stay. If there is clear-cut evidence of forum shopping — meaning the

> party filing the federal suit clearly added a new
> claim to avoid state court adjudication — then
> the district court may analyze the claims
> separately and decide if a partial stay is
> appropriate. When there is concurrent federal and
> state court jurisdiction over the additional
> claim (as opposed to exclusive federal
> jurisdiction), there is stronger evidence of
> forum shopping, as the plaintiff in the federal
> case could have pursued that additional claim in
> state court.

State Water Res., 988 F.3d at 1206-07 (alterations in State

Water Res.).

The seventh factor weighs in favor of a stay. Simmons

appears to have filed this action to circumvent any adverse

state court rulings and perceived procedural unfairness. See,

e.g., 8/12 Complaint at PageID.14. A party that seeks to stay a

state proceeding by filing a federal action likely engages in

forum shopping. See State Water Res., 988 F.3d at 1206 ("[F]orum

shopping weighs in favor of a stay when the party opposing the

stay seeks to avoid adverse rulings made by the state

court . . . ." (quotation marks and citation omitted)). Further,

since federal and state courts share concurrent jurisdiction

over FHA, ADA, and Section 1983 claims, "there is stronger

evidence of forum shopping, as the plaintiff in the federal case

could have pursued that additional claim in state court." See

id. at 1207. This Court therefore finds that the forum shopping

factor weighs in favor of dismissal or stay.

## II.  **Ruling**

While mindful that the Colorado River doctrine is only applied in "exceptional circumstances," the Court concludes this is one such circumstance. See Colo. River, 424 U.S. at 813 (quotation marks and citation omitted). Accordingly, the instant action is hereby stayed pending final resolutions of the appeal of the Judgment, the Writ, and the Order Denying Reinstatement before the ICA and the Counterclaim Proceeding before the state circuit court.

Simmons is directed to notify the Court within sixty days after judgment has been entered in Stott Property Management LLC v. Simmons, Case No. CAAP-25-0000493, if Simmons does not file an application for certiorari with the Hawai`i Supreme Court, or within sixty days of resolution of an appeal to the Hawai`i Supreme Court. See Haw. R. App. P. 40.1(a)(1) (stating that a party may seek review of an ICA decision by filing an application for a writ of certiorari thirty days after the filing of the ICA's judgment on appeal or dismissal order). Similarly, Simmons is directed to notify the Court within sixty days after judgment has been entered in Stott Property Management LLC v. Simmons, Case No. 1CCV-23-0001508 if Simmons does not file an appeal to the ICA, or within sixty days of resolution of an appeal to the ICA. See Haw. R. App. P. 4(a)(1) (stating a civil appeal must be filed within thirty days after

23

entry of the judgment or appealable order). The Court will determine whether lifting the stay is warranted at that time. This Court makes no findings or conclusions about the merits of the claims that Simmons attempted to bring in this action.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the case is STAYED. Simmons is DIRECTED to notify the Court within sixty days after judgment has been entered in <u>Stott Property Management LLC v. Simmons</u>, Case No. CAAP-25-0000493 if Simmons does not file an application for certiorari with the Hawai`i Supreme Court, or within sixty days of resolution of an appeal to the Hawai`i Supreme Court. Simmons is also DIRECTED to notify the Court within sixty days after judgment has been entered in <u>Stott Property Management LLC v. Simmons</u>, Case No. 1CCV-23-0001508 if Simmons does not file an appeal to the ICA, or within sixty days of resolution of an appeal to the ICA.

Simmons's Application to Proceed in District Court Without Prepaying Fees or Costs, filed August 12, 2025, is DENIED AS MOOT. Simmons may file a renewed Application upon the lifting of the stay.

IT IS SO ORDERED.

24

DATED AT HONOLULU, HAWAII, September 16, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

KELVIN SIMMONS VS. JASON WOO, ESQ., ET AL; CV 25-00341 LEK-KJM;
ORDER STAYING THE CASE AND DENYING PLAINTIFF'S APPLICATION TO
PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS,
[FILED 8/12/25 (DKT. NO. 3)]